**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                        )
VIKEN DETECTION CORPORATION,            )
                                        )
                    Plaintiff,          )
                                        )       Civil Action
v.                                      )       No. 24-cv-11375-PBS
                                        )
VIDERAY TECHNOLOGIES INC. and           )
PAUL E. BRADSHAW,                       )
                                        )
                    Defendants.         )
_____)

<u>**MEMORANDUM AND ORDER**</u>

September 12, 2025

Saris, J.

<u>**INTRODUCTION**</u>

Plaintiff Viken Detection Corporation ("Viken") and Defendant Videray Technologies Inc. ("Videray") are competitors in the x-ray scanner market. After Defendant Paul E. Bradshaw left his employment at Viken to establish Videray in 2017, Viken sued Videray and Bradshaw (together, "Defendants") for misappropriation of trade secrets and confidential information. The parties settled that dispute in 2020 via a settlement agreement containing general releases.

Almost four years later, Viken filed this suit against Defendants to challenge the inventorship and ownership of U.S. Patent No. 11,940,395 ("the '395 patent"), which lists Bradshaw as the inventor and Videray as the assignee. Viken primarily alleges

Case 1:24-cv-11375-PBS    Document 53    Filed 09/12/25    Page 2 of 23

that one of its employees conceived of the invention claimed in the '395 patent while he and Bradshaw were working together at Viken. Viken also seeks to rescind the 2020 settlement agreement based on alleged fraudulent misrepresentations made by Defendants that induced Viken to enter into the agreement.

Defendants now move to dismiss Viken's amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants contend that Viken released its inventorship and ownership claims in the 2020 settlement agreement and that, as a result, Viken lacks a concrete stake in the adjudication of those claims. Additionally, Defendants argue that Viken's rescission claim is untimely and, alternatively, fails to state a plausible basis for relief.

After hearing, the Court **ALLOWS** Defendants' motion to dismiss (Dkt. 26).

## BACKGROUND

The Court draws the following background from the well-pleaded facts in Viken's amended complaint, documents attached to or incorporated by reference into the amended complaint, and facts subject to judicial notice. See Cheng v. Neumann, 51 F.4th 438, 441 (1st Cir. 2022).

I.   **The Invention**

Backscatter x-ray imaging is an approach for detecting contraband in hidden areas, such as behind a solid panel of a

2

vehicle. Backscatter instruments direct a narrow x-ray beam at a solid surface and create an image from x-rays that reflect off items on the surface's back side. Such instruments generally include components that focus the x-rays emitted by the x-ray source into a narrow beam useful for scanning. One of these components is a chopper wheel, which rotates when the instrument is producing x-ray energy. The chopper wheel has slits that create a "pencil beam" of x-ray energy. '395 patent at 1:43-45. Because the slits are small compared to the chopper wheel's overall surface area, the x-rays hit a solid region and scatter off the wheel for most of its rotation. These scattered x-rays travel in various directions, including parallel to the wheel.

To protect the user from these scattered x-rays, the chopper wheel and certain other components are surrounded by a metallic housing. Backscatter instruments have long used tungsten and tungsten alloys for the housing because those metals effectively shield significant amounts of the scattered x-ray energy. Tungsten is, however, a rare and expensive metal.

The '395 patent teaches a chopper wheel design that reduces the scattered x-ray energy that hits the housing and, thus, allows for use of a more common metal for the housing. To do so, the patent uses "a labyrinth design" with two "projections" on inner and outer locations on the wheel. Id. at 2:52-60. These projections "increase[] x-ray energy attenuation of x-rays scattered from the

chopper wheel before the x-ray energy reaches the housing." Id. at 2:55-57. With this design, the housing can be made of a cheaper and lighter metal than tungsten, such as brass, but will still significantly limit the x-ray energy that escapes the instrument. Claim 1 of the '395 patent recites in relevant part:

> a chopper wheel having a planar surface configured to face in a direction of the collimator, a central axis, a plurality of slits in the planar surface, the plurality of slits extending in a radially-outward direction relative to the central axis, a first projection extending from the planar surface in a direction of the collimator, the first projection located radially-outward of the plurality of slits and provided for 360 degrees about the central axis, and a second projection extending from the planar surface in the direction of the collimator, the second projection located radially inward of the plurality of slits and provided for 360 degrees about the central axis . . . .

Id. at 8:1-13.

## II.  Conception of the Invention

Viken, a corporation headquartered in Massachusetts, develops x-ray instruments used to detect illegal contraband. Bradshaw worked at Viken as a mechanical engineer from November 2013 until his termination in May or June 2017. In his employment agreement with Viken, Bradshaw assigned to Viken all rights to any invention that he made, conceived, or reduced to practice while working at the company and that was related to or useful in the company's business.

While employed at Viken, Bradshaw worked on a handheld x-ray scanner with another Viken engineer named Mark Hamilton. In April

4

2017, Hamilton recommended to Bradshaw that they include chopper wheel projections on their prototype. An entry in Hamilton's laboratory notebook dated that month depicts a chopper wheel with two projections on the wheel's inner and outer portions. Bradshaw rejected Hamilton's idea on the basis that the necessary production efforts and delays would outweigh the utility of the projections.

III. **Bradshaw's Patent Applications and Litigation Between the Parties**

Bradshaw founded Videray shortly after his termination from Viken. In August 2019, Bradshaw filed a provisional patent application for a chopper wheel design with projections. On July 28, 2020, he filed a Patent Cooperation Treaty ("PCT") application for the same invention. The World Intellectual Property Organization ("WIPO") published Bradshaw's PCT application on February 11, 2021.[1]

While Bradshaw was pursuing his patent applications, he and Videray were engaged in ongoing litigation with Viken. In 2019, Viken filed two lawsuits against Defendants for misappropriation

---

[1] Although the amended complaint does not allege when WIPO published the PCT application, Viken does not dispute that the Court may take judicial notice of the publication date from the face of the application. See Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1001-02 (9th Cir. 2018) (affirming the district court's judicial noticing of the filing date of a WIPO patent application); Mizuho Orthopedic Sys., Inc. v. Allen Med. Sys., Inc., 610 F. Supp. 3d 367, 379 n.1 (D. Mass. 2022) (recognizing that courts may take judicial notice of patent applications). In any event, the Court's rationale for dismissing Viken's claims does not turn on the date of publication of the PCT application.

of its trade secrets and confidential information in connection with Defendants' PX1 device. Defendants' PX1 and PXUltra products practice the chopper wheel projection invention. In a discovery response during those lawsuits, Defendants mentioned that one of Videray's products contained "a lip feature around the inner and outer diameter of the wheel" but did not state that Hamilton had invented this feature. Dkt. 34-3 at 6. Defendants did, however, produce the provisional patent application to Viken pursuant to a protective order that permitted only Viken's attorneys, general counsel, and chief executive officer to view the document. Hamilton was not authorized to view the application, and the Viken officers allowed to do so were not familiar with Hamilton's invention.

On October 2, 2020, the parties executed an agreement to settle the two pending lawsuits ("the Settlement Agreement"). The Settlement Agreement, which is governed by Massachusetts law, contains mutual general releases. Viken's "General Release" of Defendants reads as follows:

> Viken and [its founder] . . . hereby release, remise, covenant not to sue, and forever discharge Mr. Bradshaw and all of his personal representatives, heirs, next-of-kin, legatees, assigns, agents, and attorneys ("Bradshaw Releasees") and Videray and its affiliates, predecessors, successors, parents, subsidiaries, assigns, shareholders, owners, officers, trustees, directors, agents, insurers, attorneys, representatives and employees ("Videray Releasees") of and from all claims, acts, debts, demands, actions, causes of action, suits, counterclaims, dues, sums of money, accounts, reckonings, judgments, covenants, contracts, controversies, agreements, promises, representations,

> damages and liabilities whatsoever of every name and
> nature, both in law and in equity, known or unknown,
> which against the Bradshaw Releasees and the Videray
> Releasees [Viken and its founder] ever had, now have or
> may have[] from the beginning of the world to the date
> of this Agreement, including without limitation those
> which relate in any way to or arise out of the [two
> pending lawsuits].

Dkt. 18-1 ¶ 6. The Settlement Agreement also required Defendants
to "provide a full narrative accounting, signed under oath by Mr.
Bradshaw, . . . of any taking, use, or disclosure of Viken's
confidential information and intellectual property" within one
week of execution of the agreement. Id. ¶ 1(b). Bradshaw's
narrative did not mention Hamilton's invention.

On March 26, 2024, the U.S. Patent and Trademark Office issued
the '395 patent based on Bradshaw's PCT application. The patent
lists Bradshaw as the sole inventor and Videray as the assignee.

## LEGAL STANDARDS

### I. Article III Standing

Under Article III's case-or-controversy requirement, the
plaintiff must possess standing to bring his lawsuit, i.e., "a
'personal stake' in the case." TransUnion LLC v. Ramirez, 594 U.S.
413, 423 (2021) (quoting Raines v. Byrd, 521 U.S. 811, 819 (1997)).
The plaintiff bears the burden of establishing standing. See id.
at 430-31. To meet this burden, he "must show (i) that he suffered
an injury in fact that is concrete, particularized, and actual or
imminent; (ii) that the injury was likely caused by the defendant;

and (iii) that the injury would likely be redressed by judicial relief." Id. at 423.

"A plaintiff must demonstrate standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" Id. at 431 (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)). Thus, when a defendant moves to dismiss for lack of standing under Rule 12(b)(1), courts generally credit all well-pleaded facts in the complaint and ask whether the plaintiff has plausibly alleged the three elements of standing. See In re Fin. Oversight & Mgmt. Bd., 110 F.4th 295, 307-08 (1st Cir. 2024); see also Wiener v. MIB Grp., Inc., 86 F.4th 76, 82 n.8 (1st Cir. 2023) (explaining that motions to dismiss for lack of standing are properly brought under Rule 12(b)(1)).[2]

## II.  **Failure to State a Claim**

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). "While a complaint attacked by a Rule 12(b)(6) motion

---

[2] Defendants purport to bring a factual challenge to Viken's Article III standing. A factual challenge to subject matter jurisdiction contests "the accuracy (rather than the sufficiency) of the jurisdictional facts asserted by the plaintiff." Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001). When faced with a factual challenge to jurisdiction, a court may consider extrinsic evidence submitted by the parties. See id. Here, Defendants' standing argument does not rely on documents extrinsic to the complaint.

to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (cleaned up). This standard requires a court to "separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Kando v. R.I. State Bd. of Elections, 880 F.3d 53, 58 (1st Cir. 2018) (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). The court must then determine whether the factual allegations permit it "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Germanowski v. Harris, 854 F.3d 68, 72 (1st Cir. 2017) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

Many of Defendants' arguments in support of dismissal -- namely, those based on release and the statute of limitations -- implicate affirmative defenses. See Martinez-Rivera v. Puerto Rico, 812 F.3d 69, 73 (1st Cir. 2016) ("As a general matter, statutes of limitations are affirmative defenses . . . ."); Ruiz-Sanchez v. Goodyear Tire & Rubber Co., 717 F.3d 249, 252 (1st Cir. 2013) ("Release is an affirmative defense."). Courts may grant a motion to dismiss based on an affirmative defense "as long as '(i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources

of information, and (ii) those facts suffice to establish the affirmative defense with certitude.'" <u>Burt v. Bd. of Trs. of the Univ. of R.I.</u>, 84 F.4th 42, 50 (1st Cir. 2023) (quoting <u>Nisselson v. Lernout</u>, 469 F.3d 143, 150 (1st Cir. 2006)).

<b>DISCUSSION</b>

## I.   <u>Declaration of Ownership</u>

Defendants argue that Viken's claim for a declaration of ownership of the '395 patent should be dismissed because Viken released this claim in the Settlement Agreement. Defendants assert that this release provides a basis for dismissal both for lack of standing under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). As an affirmative defense, release implicates the merits of a plaintiff's claim rather than a court's jurisdiction. <u>See</u> <u>Perry v. Merit Sys. Prot. Bd.</u>, 582 U.S. 420, 435 & n.9 (2017). The Court therefore assesses Viken's argument under the rubric of Rule 12(b)(6). <u>See</u> <u>United States ex rel. Winkelman v. CVS Caremark Corp.</u>, 827 F.3d 201, 207 (1st Cir. 2016) ("[A]n affirmative defense may serve as a basis for dismissal under Rule 12(b)(6)."). Viken does not dispute the Settlement Agreement's authenticity or argue that the Court may not consider it in resolving Defendants' motion to dismiss. <u>See</u> <u>Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.</u>, 267 F.3d 30, 34 (1st Cir. 2001) (approving consideration of a settlement agreement on a Rule 12(b)(6) motion where the complaint "refer[red] to the [agreement] or its terms numerous

times," the defendant's "alleged liability . . . depend[ed] directly upon whether the . . . claims [were] interpreted to have been released," and the plaintiff did not dispute the agreement's authenticity).

A "settlement agreement is a private contract . . . governed by general contract law." Wong v. Luu, 34 N.E.3d 35, 47 (Mass. 2015) (alteration in original) (quoting Warner Ins. Co. v. Comm'r of Ins., 548 N.E.2d 188, 192 n.7 (Mass. 1990)). Under Massachusetts law, contract interpretation poses "a question of law for the court." Gen. Hosp. Corp. v. Esoterix Genetic Lab'ys, LLC, 16 F.4th 304, 308 (1st Cir. 2021) (citing NTV Mgmt., Inc. v. Lightship Glob. Ventures, 140 N.E.3d 436, 443 (Mass. 2020)). "When contract language is unambiguous, it must be construed according to its plain meaning." Balles v. Babcock Power Inc., 70 N.E.3d 905, 911 (Mass. 2017); see Gen. Hosp., 16 F.4th at 308. Only if the contract is ambiguous -- that is, if its language "can support a reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken" -- may a court consider extrinsic evidence. Balles, 70 N.E.3d at 911 (quoting Bank v. Thermo Elemental Inc., 888 N.E.2d 897, 907 (Mass. 2008)); see Gen. Hosp., 16 F.4th at 308. Courts "strive 'whenever reasonably practical' to give every word meaning when interpreting a contract." Wortis v. Trs. of Tufts Coll., 228 N.E.3d 1163, 1176 (Mass. 2024) (quoting DeWolfe v. Hingham Ctr., Ltd., 985 N.E.2d 1187, 1196 (Mass. 2013)).

Although "'a release may be prompted by the settlement of a specific dispute or resolution of a specific issue,' . . . the parties may choose to negotiate a general release that 'operates to settle all other, unrelated matters.'" Gen. Hosp., 16 F.4th at 309 (quoting Eck v. Godbout, 831 N.E.2d 296, 300-01 (Mass. 2005)). This type of release "embraces everything included within its terms," even those matters "not specifically in the parties' minds at the time the release was executed." Crocker v. Townsend Oil Co., 979 N.E.2d 1077, 1086 (Mass. 2012) (first quoting Radovsky v. Wexler, 173 N.E. 409, 410 (Mass. 1930); and then quoting Eck, 831 N.E.2d at 301). A general release may encompass causes of action that had not yet accrued when the release was executed. See Gen. Hosp., 16 F.4th at 310; Eck, 831 N.E.2d at 302. "The guiding principle is that the plain meaning of the unambiguous terms of the release control." Gen. Hosp., 16 F.4th at 310.

The Settlement Agreement contains a general release by Viken in Defendants' favor. Specifically, Viken "release[d], remise[d], covenant[ed] not to sue, and forever discharge[d]" Defendants:

> of and from all claims, acts, debts, demands, actions, causes of action, suits, counterclaims, dues, sums of money, accounts, reckonings, judgments, covenants, contracts, controversies, agreements, promises, representations, damages and liabilities whatsoever of every name and nature, both in law and in equity, known or unknown, which against [Defendants] [Viken] ever had, now ha[s] or may have[] from the beginning of the world to the date of this Agreement, including without limitation those which relate in any way to or arise out of the [two pending lawsuits].

12

Dkt. 18-1 ¶ 6.

Viken does not dispute that this release encompasses claims that it could have brought against Defendants as of the date the parties executed the Settlement Agreement (October 2, 2020). Defendants argue that at that point Viken could have sued to determine ownership of the provisional and PCT patent applications Bradshaw filed in August 2019 and July 2020, respectively. District courts are split on whether a party may sue for a declaration of ownership of a patent application before the patent is issued when, as here, the ownership claim rests at least in part on a dispute over inventorship. Compare Vita-Herb Nutriceuticals, Inc. v. Probiohealth LLC, No. SACV 11-1463 DOC (MLGx), 2013 WL 271713, at *3 (C.D. Cal. Jan. 23, 2013) (concluding that such a claim may be brought), with Fin Brand Positioning, LLC v. Take 2 Dough Prods., Inc., 758 F. Supp. 2d 37, 42 (D.N.H. 2010) (holding to the contrary).

But even if Viken could not have sued for a declaration of ownership at the time the Settlement Agreement was executed, the general release still bars Viken from bringing its ownership claim. As Defendants argue, the Settlement Agreement not only released claims Viken had against Defendants as of the date of its execution but also released Defendants from any "acts" that "against [Defendants] [Viken] ever had, now have or may have[] from the

13

beginning of the world to the date of this Agreement." Dkt. 18-1 ¶ 6. While this aspect of the release is awkwardly phrased, the Court agrees with Judge Joun, who construed this same release in a patent infringement suit between these parties, that the release encompasses claims that are based on pre-Settlement Agreement acts, even if those claims accrued only after execution of the Settlement Agreement. See Videray Techs., Inc. v. Viken Detection Corp., No. 23-cv-13035 (D. Mass. Sept. 30, 2024), Dkt. 30 at 13-16. This language evinces the parties' intent to broadly release Defendants from all conduct that occurred before they signed the Settlement Agreement. Construing the release to encompass only claims that had accrued by that point would render meaningless the inclusion of the term "acts" in the release. See Wortis, 228 N.E.3d at 1176 (explaining that courts "strive 'whenever reasonably practical' to give every word meaning when interpreting a contract" (quoting DeWolfe, 985 N.E.2d at 1196)); see also Armstrong v. White Winston Select Asset Funds, LLC, 648 F. Supp. 3d 230, 250 (D. Mass. 2022) (construing release covering "any and all claims, counterclaims, demands, actions and causes of action . . . that the Releasing Parties . . . have or may have against the Released Parties . . . from the beginning of the world to the date of this Agreement" to encompass "any claims related to [the Released Parties'] conduct that occurred prior to the execution of the [release]").

Viken's ownership claim is based on pre-Settlement Agreement conduct and, thus, falls within the scope of the general release. Viken claims it is the sole owner of the '395 patent because its employees assigned all inventions to it and either Hamilton or Bradshaw invented the chopper wheel projections in 2017 while they were Viken employees. Defendants asserted their ownership of the invention when Bradshaw filed patent applications in August 2019 and July 2020. All of these acts that undergird Viken's ownership claim occurred before the parties executed the Settlement Agreement in October 2020.

Moreover, the release expresses the parties' intent to cover "claims" and "acts" that "relate in any way to or arise out of the" two lawsuits that the Settlement Agreement resolved. Dkt. 18-1 ¶ 6. One of those suits concerned Defendants' alleged misappropriation of Viken's trade secrets and confidential information in connection with Defendants' PX1 device. Viken alleges that the PX1 device practices the invention claimed in the '395 patent, which Defendants misappropriated from Viken. Viken's ownership claim therefore "relate[s]" to the prior lawsuits and is encompassed by the release.

Viken asserts that the general release does not bar its ownership claim because it already possessed legal title to the '395 patent when the parties executed the Settlement Agreement. In Viken's view, it gained legal title at the moment Bradshaw filed

the underlying patent application because of Hamilton's assignment of inventions to it. See Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc., 583 F.3d 832, 842 (Fed. Cir. 2009) (explaining that an assignee's "equitable title" in an invention conceived by an assignor "converted to legal title no later than the [patent] application's filing date"). Defendants, however, were actively asserting ownership of the invention claimed in the '395 patent before execution of the Settlement Agreement by filing patent applications claiming the invention and disclosing those applications to Viken in the prior litigation. While Viken may be correct that its ownership rights in the '395 patent commenced when the underlying patent application was filed, it released its ability to assert those ownership rights as part of the Settlement Agreement.

## II.  **Correction of Inventorship**

Defendants seek dismissal of Viken's claim under 35 U.S.C. § 256 for correction of inventorship of the '395 patent on two grounds: first, that Viken lacks Article III standing to bring this claim because Viken released its claim of ownership of the patent and, thus, has no personal stake in resolution of the inventorship question; and second, that Viken released the inventorship claim in the Settlement Agreement. Because "a federal court must resolve any doubts about [Article III] standing before proceeding to adjudicate the merits of a given case," DiCroce v.

16

McNeil Nutritionals, LLC, 82 F.4th 35, 39 (1st Cir. 2023) (quoting United States v. Catala, 870 F.3d 6, 9 (1st Cir. 2017)), the Court begins -- and ends -- with Defendants' first argument.

"[A] plaintiff seeking correction of inventorship under § 256 can pursue that claim in federal court only if the requirements for constitutional standing -- namely injury, causation, and redressability -- are satisfied." Larson v. Correct Craft, Inc., 569 F.3d 1319, 1326 (Fed. Cir. 2009). To establish standing, a plaintiff generally must show some financial interest in the outcome of the inventorship question. See James v. J2 Cloud Servs., LLC, 887 F.3d 1368, 1373 (Fed. Cir. 2018); Larson, 569 F.3d at 1327. This financial interest may consist of the ownership rights that flow from inventorship. See James, 887 F.3d at 1372-73. If the plaintiff "lacks an ownership interest" in the patent and the outcome of the inventorship claim "will not generate any other direct financial rewards," the plaintiff normally does not have standing to pursue the claim. Larson, 569 F.3d at 1327. For example, "[w]hen the owner of a patent assigns away all rights to the patent," he lacks a "'concrete financial interest in the patent' that would support standing in a correction of inventorship action." James, 887 F.3d at 1373 (alteration in original) (quoting

<u>Trireme Med., LLC v. AngioScore, Inc.</u>, 812 F.3d 1050, 1053 (Fed. Cir. 2016)).[3]

The Court agrees with Defendants that Viken lacks standing to pursue a claim for correction of inventorship of the '395 patent. As just explained, Viken released its claim for a declaration of ownership of the patent as part of the Settlement Agreement. Having done so, Viken has given up its right to assert ownership of the patent and the financial interests associated with patent ownership. Viken therefore lacks any financial stake in the outcome of the inventorship dispute. <u>See</u> <u>Vita-Herb Nutriceuticals, Inc. v. Probiohealth, LLC</u>, No. SACV 11-1463 DOC(MLGx), 2013 WL 1182992, at *4 (C.D. Cal. Mar. 20, 2013) (finding no standing for an inventorship claim because the plaintiff was "barred by the terms of [a] General Release from pursuing any claim for co-ownership of the [patent] and c[ould not] show any concrete financial interest in the outcome of a suit for corrected inventorship").

Viken stresses that courts often find a lack of standing in this context based on a plaintiff's assignment of patent rights, <u>see, e.g.</u>, <u>Larson</u>, 569 F.3d at 1326-27, whereas here, Viken has not assigned away any interest it may have in the '395 patent. An

---

[3] A plaintiff without an ownership interest in an invention may still establish standing to bring an inventorship claim by showing a "concrete and particularized reputational injury" that "has an economic component," such as an effect on his employment prospects. <u>Shukh v. Seagate Tech., LLC</u>, 803 F.3d 659, 663 (Fed. Cir. 2015). Viken does not claim any reputational injury in this case.

assignment, however, is only one way in which a plaintiff may lose the "ownership interest" in the patent or "other direct financial rewards" necessary to support standing. Id. at 1327; see Krauser v. Evollution IP Holdings, Inc., 975 F. Supp. 2d 1247, 1254-56 (S.D. Fla. 2013) (explaining that the plaintiff suing for correction of inventorship lacked a "concrete financial interest in the patents at issue" where he was collaterally estopped from asserting ownership of the patents). Viken's release of its ownership claim accomplished the same result. The Court therefore dismisses Viken's claim for correction of inventorship for lack of standing.

## III. **Rescission**

That leaves Viken's claim for rescission of the Settlement Agreement. Viken alleges that rescission is warranted because Defendants fraudulently induced it to enter into the Settlement Agreement through their failure to disclose their theft of Hamilton's invention in 1) discovery in the prior litigation between the parties and 2) the narrative Bradshaw submitted shortly after execution of the Settlement Agreement. Defendants respond that this claim is barred by the statute of limitations and fails to state a plausible basis for relief. The Court concludes that the rescission claim is untimely and, thus, does not address Defendants' alternative argument.

Defendants assert, and Viken does not dispute, that the rescission claim rests on allegations of fraudulent

19

misrepresentation and is therefore subject to a three-year statute
of limitations under Massachusetts law. See Rodi v. S. New Eng.
Sch. of L., 389 F.3d 5, 17 (1st Cir. 2004); Fin. Res. Network,
Inc. v. Brown & Brown, Inc., 754 F. Supp. 2d 128, 157-58 (D. Mass.
2010). A fraudulent misrepresentation claim accrues when "a
plaintiff learns or reasonably should have learned of the
misrepresentation." Rodi, 389 F.3d at 17 (quoting Kent v. Dupree,
429 N.E.2d 1041, 1043 (Mass. App. Ct. 1982)); see Davalos v. Bay
Watch, Inc., 240 N.E.3d 753, 757-58 (Mass. 2024) (explaining that
under the discovery rule, which applies to claims of fraudulent
misrepresentation, "a cause of action accrues when the plaintiff
discovers or with reasonable diligence should have discovered that
(1) [it] has suffered harm; (2) [its] harm was caused by the
conduct of another; and (3) the defendant is the person who caused
that harm" (quoting Magliacane v. Gardner, 138 N.E.3d 347, 357
(Mass. 2020))). "In this context, courts sometimes ask when
sufficient indicia of trouble -- storm warnings, so to speak --
should have been apparent to a reasonably prudent person." Rodi,
389 F.3d at 17.

Viken's rescission claim accrued no later than October 2020
when the parties executed the Settlement Agreement and Bradshaw
omitted from his post-settlement narrative that Defendants took
the invention allegedly conceived by Hamilton. According to the
amended complaint, Defendants disclosed to Viken Bradshaw's

provisional patent application claiming the chopper wheel projection invention during the litigation prior to execution of the Settlement Agreement. From this disclosure, Viken knew Defendants were claiming the invention in dispute.

Based on that information, Viken knew or reasonably should have known by the time the parties executed the Settlement Agreement and Bradshaw submitted his post-settlement narrative that Defendants had taken Hamilton's invention. "[U]nder the 'collective knowledge' doctrine, the 'knowledge' attributable to a corporation is normally the sum of all of the knowledge possessed by all of its employees, regardless of their position." Humana, Inc. v. Biogen, Inc., 666 F. Supp. 3d 135, 145 (D. Mass. 2023) (quoting United States v. Bank of New Eng., N.A., 821 F.2d 844, 856 (1st Cir. 1987)), aff'd on other grounds, 126 F.4th 94 (1st Cir. 2025); see Sunrise Props., Inc. v. Bacon, Wilson, Ratner, Cohen, Salvage, Fialky & Fitzgerald, P.C., 679 N.E.2d 540, 543 (Mass. 1997) ("When an agent acquires knowledge in the scope of [his] employment, the principal . . . is held to have constructive knowledge of that information" (alterations in original) (quoting DeVaux v. Am. Home Assurance Co., 444 N.E.3d 355, 358 (Mass. 1983))). While Hamilton may not have personally seen the provisional application disclosed by Defendants, his knowledge of the origins of the chopper wheel projection invention is imputed to Viken. Thus, when Bradshaw omitted from his narrative that he

had stolen that invention, Viken had enough information to know the truth.

Even if Hamilton's knowledge were not imputed to the corporation, Viken still reasonably should have discovered at that time that Hamilton purported to be the inventor of the chopper wheel projections. The parties were embroiled in litigation over Defendants' alleged misappropriation of trade secrets and confidential information from Viken, so a reasonably prudent company in Viken's position would have investigated whether a Viken employee had invented the chopper wheel projections claimed in Bradshaw's provisional application. That investigation would readily have uncovered Hamilton's purported conception of the invention, as Hamilton and Bradshaw worked closely together while Bradshaw was still at Viken.

In sum, the amended complaint makes clear that Viken's rescission claim accrued no later than October 2020. Viken filed this lawsuit more than three years later in May 2024, so its claim is time-barred. The Court therefore dismisses the rescission claim under Rule 12(b)(6).[4]

---

[4] Because the disclosure of the provisional patent application during discovery in the prior lawsuits put Viken on notice of Defendants' misrepresentations, the Court need not address Defendants' argument that Viken also had constructive notice of the misrepresentations from the publication of the PCT application in February 2021.

## ORDER

For the foregoing reasons, Defendants' motion to dismiss (Dkt. 26) is **ALLOWED**. Viken's claim for correction of inventorship (Count I) is dismissed without prejudice for lack of standing under Rule 12(b)(1). Viken's claims for a declaration of ownership of the '395 patent (Count II) and for rescission of the Settlement Agreement (Count III) are dismissed with prejudice for failure to state a claim under Rule 12(b)(6).


SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge